**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOHN MARTINEZ, | : | |
| | | Civil Action No. 05-2048 (JBS) |
| Petitioner, | : | |
| | | |
| v. | : | **OPINION** |
| | | |
| THE FEDERAL BUREAU OF PRISONS, | : | |
| et al., | | |
| Respondents. | : | |

**APPEARANCES:**

Petitioner pro se          Counsel for Respondents
John Martinez              John Andrew Ruymann
#56045-054                 Office of the U.S. Attorney
F.C.I. Fort Dix            402 East State Street
P.O. Box 1000 - Camp       Room 430
Fort Dix, NJ 08640         Trenton, NJ 08608

**SIMANDLE,** District Judge

    Petitioner John Martinez, a prisoner currently confined at

the Federal Correctional Institution at Fort Dix, New Jersey, has

submitted a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2241.[1]  The Respondents are the Federal Bureau of

---

    [1] Section 2241 provides in relevant part:

    (a) Writs of habeas corpus may be granted by the
    Supreme Court, any justice thereof, the district courts
    and any circuit judge within their respective
    jurisdictions.
    (c) The writ of habeas corpus shall not extend to a
    prisoner unless-- ... (3) He is in custody in violation
    of the Constitution or laws or treaties of the United
    States ... .

Prisons, Federal Bureau of Prisons Director Harley G. Lappin, and Warden John Nash.

## I.  <u>BACKGROUND</u>

Petitioner John Martinez was convicted pursuant to a guilty plea of unlicensed sale of firearms, in violation of 18 U.S.C. § 922(a)(1)(A), in the United States District Court for the Southern District of New York.  On November 30, 2004, Petitioner was sentenced to a term of imprisonment of one year and one day, to be followed by a term of supervised release of three years. On January 24, 2005, Petitioner self-surrendered to the Federal Correctional Institution at Fort Dix, New Jersey, where he remains confined.

Petitioner's projected release date is December 7, 2005. Petitioner's "Pre-Release Preparation Date," or the earliest date he would be considered for pre-release transfer to a Community Corrections Center, is November 7, 2005.

It is undisputed that Petitioner's Pre-Release Preparation Date was established pursuant to regulations established by the Bureau of Prisons ("Bureau" or "BOP"), 28 C.F.R. §§ 570.20 and 570.21 (the "2005 Regulations"), which became effective on February 14, 2005.  This Court has not been advised that the Bureau has determined when, if at all, Petitioner will be transferred to a CCC for pre-release programming.

2

Petitioner contends that the 2005 Regulations "conflict" with 28 U.S.C. §§ 3621(b) and 3624(c), which address the designation of prisoners' place of imprisonment and pre-release programming.[2]  In addition, Petitioner argues that the February 2005 regulations "illegally limits and constrains Bureau of Prison discretion to designate CCC to the last 10% of a prisoners sentence [and] that said policy is illegal, overly broad, and does not allow flexibility for meritorious facts justifying six (6) months of CCC designation ... ."  In support of his arguments, Petitioner relies, inter alia, upon Drew v. Menifee, 2005 WL 525449 (S.D.N.Y. March 4, 2005).

In their Answer, Respondents assert that this Court lacks jurisdiction over this § 2241 Petition, that Petitioner has failed to exhaust his administrative remedies, that Petitioner's challenge to the December 2002 policy is moot, and that the 2005 Regulations are a proper exercise of the Bureau's discretionary authority to determine prisoners' places of imprisonment under 18 U.S.C. § 3621(b).  In particular, Respondents argue that the Bureau has properly exercised its discretion through categorical rulemaking as approved by the U.S. Supreme Court in Lopez v. Davis, 531 U.S. 227 (2001).

---

[2] Petitioner also challenges a BOP policy regarding placement for pre-release programming implemented in December 2002.  As will be discussed, infra, that claim is moot.

3

II.   <u>ANALYSIS</u>

<u>Jurisdiction</u>

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 2241(a) and (c) in that Petitioner challenges his custody, in this district, under the authority of the United States and in violation of the laws of the United States.  <u>See</u> <u>United States v. Ferri</u>, 686 F.2d 147, 158 (3d Cir. 1982), <u>cert. denied</u>, 459 U.S. 1211 (1983) (claims attacking the execution of a petitioner's sentence are properly brought under 28 U.S.C. § 2241).  <u>See also</u> <u>Kingsley v. Bureau of Prisons</u>, 937 F.2d 26, 30 (2d Cir. 1991) ("challenges to the length, appropriateness or conditions of confinement are properly brought under 28 U.S.C. § 2241").

Indeed, "Section 2241 of title 28 has long been recognized as the basis for challenging the execution of the sentence of a person in federal custody or a person sentenced for violating a federal criminal statute."  <u>Zucker v. Menifee</u>, 2004 WL 102779, *3 (S.D.N.Y. January 21, 2004) (citing <u>Maleng v. Cook</u>, 490 U.S. 488, 493 (1989) (per curiam)).  Additionally, this Court has the authority to compel the BOP to exercise its authority to select and designate a place for service of sentence.  <u>See</u> <u>McCarthy v. Doe</u>, 146 F.3d 118 (2d Cir. 1998).  Habeas corpus relief under 28 U.S.C. § 2241 is available to effectuate this authority to the

extent that the prisoner is in any form of "custody" in this district.  <u>See</u> <u>Hensley v. Municipal Court</u>, 411 U.S. 345 (1973).

<u>Exhaustion</u>

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.  <u>See</u>, <u>e.g.</u>, <u>Callwood v. Enos</u>, 230 F.3d 627, 634 (3d Cir. 2000).  The exhaustion doctrine promotes a number of desirable goals including filtering out frivolous claims and developing a full and complete record for trial purposes; nevertheless, exhaustion of administrative remedies is not required where exhaustion would not effectuate these goals.  <u>See</u>, <u>e.g.</u>, <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir. 1998); <u>Lyons v. U.S. Marshals</u>, 840 F.2d 202, 205 (3d Cir. 1988); <u>Carling v. Peters</u>, 2000 WL 1022959, *2 (E.D. Pa. 2000).

Respondents assert that Petitioner did not exhaust his administrative remedies, <u>see</u> 28 C.F.R. § 542.10 et seq.  Here, there is no need to exhaust in order to develop a factual record, nor does this matter require application of the agency's particular expertise.  Petitioner does not challenge the application of the BOP's policies to him, but instead challenges whether the policy accurately implements the governing statute pursuant to which it was promulgated.  The 2005 Regulations are

categorical, meaning that the BOP will not consider a transfer to CCC-type confinement until the last 10% of any prisoner's sentence.  This is a question within the expertise of the courts. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984) ("The judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent.").

Statutory Language and the Changes in BOP policy

Federal law imposes upon the Bureau of Prisons the obligation and discretion to designate the place of a prisoner's imprisonment, as follows:

> (b) Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoners's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
>> (1) the resources of the facility contemplated;
>>
>> (2) the nature and circumstances of the offense;
>>
>> (3) the history and characteristics of the prisoner;
>>
>> (4) any statement by the court that imposed the sentence--
>>
>>> (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

      (B) recommending a type of penal or correctional facility as appropriate; and

      (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.

      In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status.  The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

In addition, federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

      (c) Pre-release custody.--The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.  ...

18 U.S.C. § 3624(c).

In implementing pre-release custody programming under this statute, the BOP has traditionally used a variety of community-based programs, including CCCs, Comprehensive Sanctions Centers ("CSCs"), the Mothers and Infants Together ("MINT") program, and Intensive Confinement Centers ("ICCs"), as well as home confinement.  BOP Program Statement ("PS") 7310.04, <u>Community</u>

Corrections Center (CCC) Utilization and Transfer Procedure (Dec. 16, 1999), provides guidance to BOP staff as to the administration of pre-release programs generally.

Before December 2002, the BOP interpreted these statutes to allow the BOP to designate inmates to serve any or all of their terms of imprisonment in Community Corrections Centers.  The BOP also had a long-standing policy of considering prisoners for up to 180 days pre-release placement in a CCC, regardless of the length of sentence.

On December 13, 2002, the Office of Legal Counsel of the United States Department of Justice prepared a Memorandum Opinion for Deputy Attorney General Larry D. Thompson on the question "whether the BOP has general authority, either upon the recommendation of the sentencing judge or otherwise, to place [a federal offender whom the BOP deems to be low-risk and nonviolent and who has received a short sentence of imprisonment] directly in community confinement at the outset of his sentence or to transfer him from prison to community confinement during the course of his sentence."

The Office of Legal Counsel ("OLC") began its analysis with a review of Federal Sentencing Guidelines provisions addressing imprisonment and community confinement and federal court opinions concluding that community confinement does not constitute "imprisonment" for purposes of these Sentencing Guidelines

8

provisions.  The OLC progressed from this analysis to a determination that a community corrections center ("CCC") can not constitute a "penal or correctional facility" that may serve as a place of imprisonment within the meaning of § 3621(b).  If a CCC were considered a place of imprisonment within the meaning of § 3621(b), the OLC reasoned, "then the time limitation in section 3624(c) on BOP authority to transfer a prisoner to a non-prison site – i.e., for a period, not to exceed six months, of the last 10% of the term of his sentence – would be rendered null with respect to community confinement."  The OLC concluded that the practice, pursuant to the BOP's interpretation of § 3621(b), of placing certain prisoners in CCC for a period longer than that mandated by the specific language of § 3624(c) was not lawful.

Based upon this OLC Memorandum Opinion, on December 16, 2002, Deputy Attorney General Larry D. Thompson sent a Memorandum to BOP Director Kathleen Hawk Sawyer advising her the that BOP's prior interpretation of § 3621(b) as including CCCs is unlawful and directing the BOP to cease placement of federal prisoners in CCCs except for the lesser of six months or ten percent of the sentence imposed on the offender.

On December 20, 2002, the BOP adopted the OLC legal opinion in a memorandum mandating that "Pre-release programming CCC designations are limited in duration to the last 10% of the prison sentence, not to exceed six months."  This "ten-percent

9

rule" represented a reversal of long-standing BOP policy to consider prisoners for pre-release CCC placement for up to the final six months of their sentences (the "six-months rule"), regardless of the total term of imprisonment.  <u>See</u>, <u>e.g.</u>, <u>Schorr v. Menifee</u>, 2004 WL 1320898, *2 (S.D.N.Y. June 14, 2004) (and cases cited therein).  The new ten-percent rule was instituted without notice to the public and was not reflected in any BOP Program Statement.  The new ten-percent rule generated a wave of litigation from federal prisoners seeking its invalidation on various grounds; federal courts addressing the issues raised in this litigation were sharply divided as to the validity of the new policy.  <u>Id.</u> at *3 (collecting cases).  <u>See also</u> <u>Miranda v. Miner</u>, Civil Action No. 04-2590(JBS) (D.N.J. Aug. 20, 2004) (finding the December 2002 policy invalid).

Responding to this division, on August 18, 2004, the BOP published proposed regulations regarding placement in CCCs or home confinement.  <u>See</u> 69 Fed.Reg. 51213 (2004).  Because numerous U.S. District Courts had held that a CCC is a "penal or correctional facility" within the meaning of § 3621(b) and that the BOP had discretion under 18 U.S.C. § 3621(b) to place offenders, sentenced to a term of imprisonment, into CCCs at any time during their imprisonment, the proposed regulations reflected an acquiescence in that statutory construction and a determination how to exercise that discretion.  Specifically, the

BOP determined to exercise its discretion categorically to permit designation of inmates to community confinement[3] only as part of pre-release custody and programming, during the last ten percent of the prison sentence being served, not to exceed six months, except where statutorily-created programs explicitly authorize greater periods of community confinement.

In the Federal Register, the BOP stated that it had considered the list of factors contained in § 3621(b), as well as other considerations, in reaching this decision.  The BOP identified as "most significant" the following factors: consistency in designating inmates to places of confinement; the resources of CCCs make them particularly well suited as placement options for the final portion of offenders' prison terms; policy determinations of the Sentencing Commission limiting confinement in CCCs; and the congressional sentencing policy, as reflected in § 3624(c), that pre-release transitional programming "exist" during the last ten percent of the prison sentence, not to exceed six months.  The BOP also considered the degree to which designation to a CCC could undermine the deterrent effect of imprisonment.

Following a period for comment, the BOP issued final regulations on January 10, 2005, to become effective on February

---

[3] "Community confinement" is defined to include community corrections centers (also known as "halfway houses") and home confinement.

11

14, 2005.[4]  70 Fed. Reg. 1659 (2005).  Several commenters
expressed concern that the new rule "undermines the Bureau's
statutory authority to make prisoner-specific determinations
under § 3621(b)."  The BOP responded that "[t]he Bureau will
continue to evaluate these factors when making individual
designations to appropriate Bureau facilities, and this rule will
not adversely affect such individualized determinations."   In
response to the comment that the rule does not allow the Bureau
to consider facility resources in making designation
determinations, the Bureau responded that the "particular
characteristics and advantages of CCCS ... make them best suited
to particular inmates during the last ten percent of the prison
sentence being served, not to exceed six months."  In addition,
"[b]y ensuring that offenders sentenced to prison terms not be
placed in CCCs except during the last ten percent of their prison
sentences (not to exceed six months), the new rule will help
ensure that CCCs remain available to serve the purposes for which
their resources make them best suited."  Several commenters also
asserted that the rule is not consistent with the intent of
Congress.  Noting that several courts had held that the Bureau

---

[4] During the comment period, two U.S. Courts of Appeals
issued opinions finding that § 3621(b) authorizes the Bureau to
place inmates in CCCs at any time during service of their prison
sentence and that this authority is not limited by § 3624(c) to
the last ten percent of the sentence being served.  See Elwood v.
Jeter, 386 F.3d 842 (8th Cir. 2004) and Goldings v. Winn, 383
F.3d 17 (1st Cir. 2004).

had discretion under § 3621(b) to place offenders sentenced to a term of imprisonment in CCCs at any time, the Bureau also noted that courts had acknowledged that the Bureau has discretion with regard to how it implements its mandatory pre-release obligation under § 3624(c), and stated that the Bureau considers it prudent to exercise its discretion in a manner to minimize the potential for disparity of treatment.  Accordingly, with one minor change not relevant here, the BOP adopted the proposed rules as final.[5] See 28 C.F.R. §§ 570.20, 570.21.

The Validity of the New Regulations

The new regulations have inspired a new round of litigation. Again, the courts that have addressed the issue are split on the validity of the new regulations.  See, e.g., Moss v. Apker, 2005 WL 1593016 (S.D.N.Y. July 6, 2005)(new regulations represent a reasonable interpretation of § 3621(b), including consideration of all statutory placement factors, and do not increase punishment in violation of Ex Post Facto Clause); Levine v. Menifee, 2005 WL 1384021 (S.D.N.Y. June 9, 2005) (same); Pimentel v. Gonzalez, 367 F.Supp.2d 365 (E.D.N.Y. May 3, 2005) (new regulations are invalid because they improperly preclude consideration of the § 3621(b) factors in making placement

---

[5] The promulgation of 28 C.F.R. §§ 570.20 and 570.21 has mooted Petitioner's challenge to the December 2002 policy.  See Pimental v. Gonzalez, 367 F.Supp.2d 365, 372 (E.D.N.Y. May 3, 2005).

decisions); <u>Wiesel v. Menifee</u>, 2005 WL 1036297 (S.D.N.Y. May 2, 2005) (finding that the new regulations are a lawful exercise of the Bureau's discretion, but that they violate the Ex Post Facto Clause with respect to prisoner convicted before the new rule went into effect);[6] <u>United States v. Paige</u>, 369 F.Supp.2d 1257 (D. Montana April 22, 2005) (BOP failure to consider the § 3621 factors in new regulations violates congressional intent and is an unreasonable interpretation of statutes at issue); <u>Cook v. Gonzales</u>, 2005 WL 773956 (D.Or. April 5, 2005) (regulations invalid because they do not permit consideration of the § 3621(b) placement factors); <u>Yip v. Federal Bureau of Prisons</u>, 363 F.Supp.2d 548 (E.D.N.Y. April 1, 2005) (new regulations valid exercise of discretion); <u>Drew v. Menifee</u>, 2005 WL 525449 (S.D.N.Y. March 4, 2005) (the new regulations are invalid because the Bureau's categorical exercise of discretion does not consider any of the factors that the Bureau is specifically required to consider by statute).

In 2001, the U.S. Supreme Court addressed a similar controversy involving the Bureau of Prisons interpretation and implementation of 18 U.S.C. § 3621(e)(2)(B), governing early release for successful completion of a drug abuse treatment program. See <u>Lopez v. Davis</u>, 531 U.S. 230 (2001). The Bureau,

---

[6] Petitioner here does not allege a violation of the Ex Post Facto Clause. Accordingly, this Court will not address that issue.

14

and all courts to evaluate the new regulations, have cited <u>Lopez</u>
in support of their positions.  Accordingly, a review of <u>Lopez</u> is
instructive.

Federal law requires the BOP to make substance abuse
treatment available for "each prisoner the Bureau determines has
a treatable condition of substance addiction or abuse."  Section
3621(e)(2)(B) provides that  "[t]he period a [federal] prisoner
convicted of a nonviolent offense remains in custody after
successfully completing a [substance abuse] treatment program may
be reduced by the Bureau of Prisons."  Initially, in Program
Statement No. 5162.02, § 9 (July 24, 1995), because the statute
explicitly confined the early-release incentive to prisoners
"convicted of a nonviolent offense," the BOP excluded all
prisoners convicted of a "crime of violence," which it defined to
include, among others, a drug trafficking conviction under 21
U.S.C. § 841, if the offender had received a two-level sentence
enhancement under United States Sentencing Commission, Guidelines
Manual § 2D1.1(b)(1), for possessing a dangerous weapon during
commission of the drug offense.

In the face of a circuit split over the validity of the
BOP's definition of "crime of violence," the Bureau published a
new regulation, which did not rely upon a definition of
"nonviolent offense" or "crime of violence."  Instead, pursuant
to the BOP's asserted statutory discretion to prescribe

15

<u>additional</u> early release criteria, the BOP excluded specific categories of inmates, including those whose current offense was a felony "[t]hat involved the carrying, possession, or use of a firearm or other dangerous weapon."  <u>See</u> 28 C.F.R. § 550.58(a); 62 Fed.Reg. 53690-53691 (1997).

In <u>Lopez</u>, the Supreme Court upheld the BOP's exercise of its discretion through categorical exclusion of certain classes of prisoners from early-release eligibility.  The Court focused first on the statutory text, which instructs that the BOP "may" reduce the sentence of a nonviolent offender who has successfully completed a drug treatment program.  The Court found that Congress's use of the permissive "may" contrasted with its use elsewhere in § 3621 of "shall" to impose discretionless obligations, concluding that the BOP "thus has the authority, but not the duty, both to alter the prisoner's conditions of confinement and to reduce his term of imprisonment."  531 U.S. at 241.

The Court also noted that § 3621(e)(2)(B):

> has not identified any further circumstance in which
> the Bureau either must grant the reduction, or is
> forbidden to do so.  In this familiar situation, where
> Congress has enacted a law that does not answer "the
> precise question at issue," all we must decide is
> whether the Bureau, the agency empowered to administer
> the early release program, has filled the statutory gap
> "in a way that is reasonable in light of the
> legislature's revealed design."  We think the agency's
> interpretation is reasonable both in taking account of
> preconviction conduct and in making categorical
> exclusions.

<u>Lopez</u>, 531 U.S. at 242 (citing, <u>inter</u> <u>alia</u> <u>Chevron U.S.A. Inc. v.</u>
<u>Natural Resources Defense Council, Inc.</u>, 674 U.S. 837 (1984);[7]
other citations omitted).  Moreover "the statute's restriction of
early release eligibility to nonviolent offenders does not cut
short the considerations that may guide the Bureau."  531 U.S. at
243.

Rejecting the prisoner's argument that the BOP must exercise
its discretion on the basis of case-by-case assessments, the
Court held that "'[E]ven if a statutory scheme requires
individualized determinations,' which this scheme does not, 'the
decisionmaker has the authority to rely on rulemaking to resolve
certain issues of general applicability unless Congress clearly
expresses an intent to withhold that authority.'  ...  The Bureau

_____

[7] The standards set forth in <u>Chevron</u> govern a court's review
of an agency's construction of a statute.

When a court reviews an agency's construction of the
statute which it administers, it is confronted with two
questions.  First, always, is the question whether
Congress has directly spoken to the precise question at
issue.  If the intent of Congress is clear, that is the
end of the matter; for the courts, as well as the
agency, must give effect to the unambiguously expressed
intent of Congress.  If, however, the court determines
Congress has not directly addressed the precise
question at issue, the court does not simply impose its
own construction on the statute, as would be necessary
in the absence of an administrative interpretation.
Rather, if the statute is silent or ambiguous with
respect to the specific issue.  the question for the
court is whether the agency's answer is based on a
permissible construction of the statute.

<u>Chevron</u>, 467 U.S. at 842-43 (footnotes omitted).

is not required continually to revisit 'issues that may be
established fairly and efficiently in a single rulemaking
proceeding.'"  531 U.S. at 243-44.  Having decided that the BOP
could categorically exclude prisoners based upon their
preconviction conduct, the Court further held the specific
exercise of that discretion reasonable and permissible.  531 U.S.
at 244.

Even the dissenters agreed that the BOP could adopt a
uniform set of criteria for consideration in evaluating
applications for sentence reduction and that dispositive, or near
dispositive, weight could be given to certain criteria.  See
Lopez, 531 U.S. at 726 (Stevens, J., with whom the Chief Justice
and Justice Kennedy joined, dissenting).

Thus, it is clear that where Congress has granted the BOP
authority to exercise discretion in implementing a statute, the
BOP may rely on rulemaking to resolve issues of general
applicability "in a way that is reasonable in light of the
legislature's revealed design."

Here, § 3621(b) sets forth a series of five factors to guide
the BOP's exercise of discretion in making placement decisions.
The BOP has explained that it considered those factors in
promulgating the February 2005 Regulations and that it determined
to give particular weight to certain factors in making its
categorical determination that no prisoner will be considered for

18

CCC placement prior to the final ten percent of his sentence, not to exceed six months.  This exercise of discretion is reasonable in light of the statutory design and falls within the <u>Lopez</u> rule. Thus, the regulations are valid.

III.  <u>CONCLUSION</u>

For the reasons set forth above, the Petition must be denied.  An appropriate order follows.

**  s/ Jerome B. Simandle       **
Jerome B. Simandle
United States District Judge

Dated:  **November 16, 2005**

19